**TANNER & ORTEGA, L.L.P.**
ATTORNEYS AT LAW
WWW.TANNERORTEGA.COM

HOWARD E. TANNER*
HUGO G. ORTEGA
*MEMBER OF N.Y., N.J. AND D.C. BAR

| | |
|---|---|
| **NEW YORK CITY OFFICE**<br>277 BROADWAY<br>SUITE 1701A<br>NEW YORK, NY 10007<br>OFFICE: (212) 962-1333<br>FAX: (212) 962-1778 | **WHITE PLAINS OFFICE**<br>170 HAMILTON AVENUE<br>SUITE 300<br>WHITE PLAINS, NY 10601<br>OFFICE: (914) 358-5998<br>FAX: (212) 962-1778 |

December 26, 2025

Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
United States District Courthouse
300 Quarropas Street
White Plains, NY 10601

BY ECF AND EMAIL/PDF

      Re:    ***United States v. Ricki Rickaline Gibbs*, 25 Cr. 322 (KMK)**
                  **Corrected Defense Sentencing Letter**

Dear Judge Karas:

      I submit this sentencing letter on behalf of Ricki Rickaline Gibbs, who is scheduled to be sentenced by this Court on Wednesday, January 7, 2026 at 2:00 pm for her plea of guilty to Count One of the Superseding Indictment, to 18 USC §1349, Conspiracy to Commit Wire Fraud and Mail Fraud. For the mitigating factors set forth herein, which include the defendant's personal history, letters of support, psychiatric reports and counseling, volunteer work in the community, lack of prior criminal history and total compliance with pretrial release conditions throughout the pendency of this case, I respectfully request that the Court impose a substantially below-Guidelines Range sentence that would be sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. §3553(a).

### Factual and Case Background, Plea Agreement and Objections to Probation PSR

      As detailed in the Probation Office's Final Presentence Report ("PSR") dated December 8, 2025, from 2019 until 2023, the defendant participated with others in a fraudulent plan in notifying elderly victims[1] that they had won a large sweepstakes prize. Before being paid out the award, they were told that they needed to pay certain fees and taxes. Other members of the

---

[1] Although the scheme purportedly involved older or "elderly" victims, the defendant maintains that she never knew the age range of the victims in this case or specifically, that they were elderly. The parties agreed that a vulnerable victims' enhancement would not be applied in the Plea Agreement.

1

conspiracy would call and text the victim to facilitate the transfers of money for these "fees and taxes" which were either physically mailed or electronically transferred to accounts in the defendant's name. A total of $1.6 million dollars was lost by the multiple victims of the fraud. (PSR ¶¶7-19)

      The defendant was arrested without incident on August 9, 2023, and charged in a Complaint with one count of participating in conspiracy to commit wire fraud. While represented by prior retained counsel, Scott Migden, Esq., she was presented for her Initial Appearance before the Honorable Andrew E. Krause, who granted bond, which included an unsecured $100,000 personal recognizance bond cosigned by two financially responsible persons, and other standard conditions. After such conditions were satisfied, Ms. Gibbs was released on September 8, 2023. (ECF Doc Nos. 5, 9). She subsequently participated in two proffers with the Government, with the last one being an innocence proffer, which took place on January 24, 2024.[2] (PSR ¶¶22, 23).

      On May 17, 2024, Mr. Migden filed a Motion to Withdraw due to the defendant's inability to pay his attorney fees. On June 6, 2024, an Attorney Appointment Hearing was held before the Honorable Victoria Reznik when Mr. Migden was relieved and I was appointed pursuant to CJA.



      Based upon mitigating circumstances in this non-violent offense and also at the suggestion of Pretrial Services, on April 24, 2025, I applied on my client's behalf for her acceptance to the Young Adult Opportunity Program[3], ("YAOP"). On May 29, 2025, I received a letter from the Honorable Sarah Netburn stating that my client was "not been approved for the Program, for which only a limited number of spots were available". As Ricki was at the upper end of the eligible age range at 25 years old, I suspect that may have played a significant role in the rejection.

---

[2] After my appointment to represent the defendant, among many other topics addressed during my representation, we discussed the substance of her proffers (PSR ¶¶22, 23), with explanations of certain legal concepts, and potential jury charges.

[3] "The SDNY Young Adult Opportunity Program is an intensive judicially supervised pretrial program for non-violent young adults (ages 18-25) charged in this District. The Program is run through the Court's Pretrial Services Office and is overseen by U.S. District Judge Ronnie Abrams and U.S. Magistrate Judge Sarah Netburn. The Program provides young adult defendants with structure and accountability and offers education and employment support, counseling, and treatment resources. Program participants, if they are successful, may receive a shorter sentence, a reduction or deferral of the charges filed against them, or possibly a dismissal of the charges entirely." https://nysd.uscourts.gov/programs/young-adult-opportunity-program

After protracted plea negotiations with the Government, the parties were able to reach a pretrial resolution by Plea Agreement dated September 2, 2025. On September 3, 2025, the defendant appeared before the Honorable Judith C. McCarthy and entered a plea of guilty, to Count One of the Superseding Indictment (ECF Doc No. 54) to 18 USC §1349, Conspiracy to Commit Wire Fraud and Mail Fraud. The parties stipulated to a Base Offense Level of 7, with a 16-point enhancement because of the loss amount; a 2-point enhancement due to there being 10 or more victims; and a 2-point enhancement owing to a substantial part of the crime taking place outside of the United States. A three-level reduction for acceptance of responsibility calculated to a Total Offense Level of 24. At Criminal History Category I, since this is the defendant's first arrest, the Guidelines Range calculates to 51-63 months' imprisonment.

The PSR agrees with the Plea Agreement Guidelines Range calculation and recommends a below Guidelines Range sentence of 40 months' imprisonment to be followed by 3 years' Supervised Release. (PSR, Addendum, pp. 25-26), While I agree that a below Guidelines range sentence is appropriate, I submit that for the reasons detailed herein that their 40-month prison sentence recommendation would be greater than necessary and unduly harsh.

The defendant disputes certain allegations in the PSR. Specifically, Paragraph 20 alleges that "[d]uring the time period of her participation in the Elder Fraud Scheme, [the defendant] drove a BMW, purchased a home in Jamaica, and used proceeds obtained from victims to fund a clothing business she started …". Ricki denies ever purchasing any home in Jamaica or anywhere else at any time, much less during the time window of the conspiracy. While the defendant did in fact "drive" a 2016 BMW during the time period of the conspiracy, her purchase of it is unrelated to this case. She bought it, in large part, by trading in her 2016 Toyota. The clear implication of these assertions by the Government is that the defendant used proceeds of the fraud to buy a house and a car. I am informed by the Government that they do not have sufficient evidence that traces any proceeds obtained from the fraudulent scheme to the BMW or a purported home purchase. In any event, as previously stated, the Ricki never bought a home. I therefore request that these allegations be deleted from Paragraph 20. The defendant does not dispute the use of such proceeds to fund her clothing business as alleged.

In addition to the PSR's detailed discussion of the defendant's personal background (PSR ¶¶50-58), physical and psychiatric history (PSR ¶¶59-61), education and employment history (PSR ¶¶64-66, 68-73), and of the instant offense (PSR ¶¶7-19), ████████████████ ████████████████████████████████████████████████████ Therefore, for the purpose of brevity, I will not repeat such details but focus on how the applicable 18 USC §3553(a) factors greatly support a below Guidelines range sentence. ████████████████████████

3



## Sentencing Considerations

In *Gall v. United States*, 552 U.S. 38, 49-50 (2007), the Supreme Court held that the guidelines provide a starting point for a reasonable sentence, however, a sentencing court "must make an individualized assessment based on the facts presented." The Court also stated that the sentencing court cannot "presume that the Guidelines range is reasonable." Id. As a result, the sentencing court can use the advisory guidelines to create an appropriate sentence after considering the factors enumerated in 18 U.S.C. § 3553(a). That appropriate sentence may be outside the guidelines range as long as the "justification is sufficiently compelling to support the degree of the variance." *Gall*, at 50. I submit that the defense requested sentence of a well-below Guidelines range sentence is justified under the totality of circumstances.

*United States v. Booker*, 543 US 220 (2005), held that the Court has the duty to consider the recommended guideline range along with the other factors listed in 18 USC §3553(a). It is therefore respectfully requested that the Court consider, along with the United States Sentencing Guidelines:

The nature and circumstances of the offense and the history and characteristics of the defendant.

    a)    The nature and circumstances of the offense

The nature and underlying facts of this case are undoubtedly serious. Ricki assisted others in fraudulently obtaining large sums of money from victims which, as described in the PSR, caused substantial, and in some cases, life-altering financial hardship to victims. However, it is clear that her role was as the depository of the fraudulently obtained funds by check or wire that were sent by the victims to accounts in her name. The extent of her "control" (PSR ¶25) over these accounts amounted to her transfer of those funds to management level members of the conspiracy such as "Robert James", "Robert Hill", or "Mark Miller" (PSR ¶8). These were the persons (or person) who fraudulently induced the victims to part with their money through phone conversations and text messages by falsely telling them that they were the winners of large sweepstakes prizes. I do not believe that there is any evidence that Ricki ever personally met or

had any phone or text conversations with the victims. While she did use some of the funds taken from the victims, such as the few thousand dollars for her clothing business, (PSR ¶20), she was clearly not the one enriched by this scheme. Probation concluded that she has an inability to pay any fine due to her "limited assets" and negative net worth, (PSR ¶¶74-77).

This is not to minimize my client's responsibility for the crime to which she has pleaded guilty. It is meant to highlight that a well-below Guidelines range is supported by this factor, when evaluating my client's role, ostensibly as the depository and transferer of the funds, as opposed to the person or persons who created the scheme, actually induced the victims and ultimately ended up with the large bulk of the stolen money. Therefore, given that the high Guidelines range of 51-63 months imprisonment is largely driven by the 16-point enhancement due to the $1.6 million dollar loss[6] suffered by the victims, I ask the Court to consider in imposing sentence that although " [o]f the more than $1.6 million lost by victims of the Elder Fraud Scheme, $1,379,402, went to Gibbs," (PSR, Addendum, p. 25), the money did not end up with Gibbs. (PSR ¶¶74-77).

     b)     The history and characteristics of the defendant.

This factor greatly supports a sentence well-below Guidelines range. ▮▮▮▮▮▮



Despite this unfortunate history, at 31 years old, this case represents the defendant's first and only contact with the criminal justice system. She had steady full-time employment as a home health aide, when she lost her job due to her arrest, (PSR ¶¶72-73). She is now focused on furthering her education and is currently enrolled as a student in her second semester at The College of Westchester, majoring in Human Services, with a GPA of 3.5. (PSR ¶64). Her Adjunct Professor, Timothy Montalvo, glowingly writes to the Court (Ex. C):

---

[6] It should also be noted that the $1.6 million dollar loss, is just over the threshold of $1.5 million dollars for the 16-level enhancement.

> "Throughout my time working with Ricki, she consistently demonstrated professionalism, empathy, and a strong commitment to learning—qualities that will serve her well in any role within the helping professions… What stands out most about Ricki is her empathy and professionalism. She consistently displays a calm, grounded presence that puts those around her at ease. Whether working with vulnerable patients or collaborating with peers, she brings integrity, reliability, and compassion to every interaction… She has my highest recommendation."

Ricki is also an active member of her church and a dedicated volunteer in her community, for Supporting Youth Development through Positive Youth Engagements (SYD-PYE), a youth-centered project that focuses on addressing youth risk factors for crime and violence in at-risk communities; as well as for the Focus Forward Project, a nonprofit organization dedicated to providing an educational curriculum focused on reentry for individuals charged with federal crimes. Letters from the Rev. Hector J. Falconer from Jamaica Link Ministries, and from representatives of the aforementioned community service organizations, attesting to Ricki's invaluable service to them are attached, (Ex. C).

My client has consistently expressed to me her tortured feelings of guilt and remorse for the impact her actions had on the victims, which was magnified by the fact that they were older people, as explained in her letter to the Court. Probation believes that the defendant "now recognizes the gravity of her actions." (PSR, Addendum, p. 26). As she writes to the Court, (Ex. D):

> "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ressing my deepest regret for the pain I have caused the victims. I am truly sorry for my actions, and I carry the weight of this remorse every single day… I am not someone who seeks to harm or take advantage of others. I come from humble beginnings and have faced many challenges, but my life has been shaped by the unwavering love of my grandparents, who raised me after my mother passed away when I was just four years old. I made a solemn promise to care for them as they grew older, and I am grateful that I was able to fulfill that promise. Their love taught me to care deeply for others, *especially the elderly*. This compassion led me to devote myself to working in dialysis centers, nursing homes, and rehabilitation facilities. I've saved my own money to provide food to seniors in my community and even organized efforts to feed the elderly during the hardest days of the pandemic.

6

> These acts of kindness give my life meaning and purpose.
>
> Since August 1, 2023, I have not known peace. I wake every morning haunted by the consequences of my poor judgment—a judgment clouded by lies I once believed. Anxiety grips me constantly; thinking about the victim makes me physically ill. I am tormented by the knowledge that someone suffers because of my role in this. At night, I tremble before sleep, and I am filled with dread when I see an elderly person or hear a call from an unknown number. Though I am free, I am trapped in a prison of my own making—haunted by memories of confinement, the cold metal of my restraints, and the chaos of jail life. While I was in jail, I endured the physical and emotional pain of a miscarriage. Your Honor, the suffering was unbearable on every level…
>
> I have been careful to follow all the rules set by the court, showing my commitment to abiding by the law and demonstrating my responsibility. I humbly ask you, the one with the power to shape my future, to show mercy. I accept responsibility for what I've done and am willing to face punishment—anything but prison. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ School has always been my refuge and my path forward. After the darkest years of my youth, it remains the light that guides me. I am on the cusp of graduating, and I want to continue healing, growing, and giving back to the community I once harmed." (*Id.*) (Emphasis added).

The need for the sentence imposed.  18 U.S.C. § 3553(a)(2).
a)   To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

Finally, what my client does not mention in her letter (Ex. D) are the collateral consequences of her conviction, no matter what sentence is imposed, which could not be more impactful on her future. She will likely lose her United States Citizenship through denaturalization, and then be deported, as a result of this conviction. I ask the Court to take this into consideration when considering the need to promote respect for the law for just punishment.

      b)    To afford adequate deterrence to criminal conduct and protection for the public.

      I submit to the Court that deterrence of future criminal conduct has already been accomplished by the defendant's conviction. As previously stated, this entirely non-violent case represents her first arrest, she is 31 years old, an actively enrolled college student with a high GPA and with vocational skills as a dialysis technician, nursing assistant and home health aide. The letter exhibits attached hereto all attest to the defendant's very strong likelihood of not only leading a law-abiding life, but also giving back to the community. The restitution amount to be imposed and resulting payments, likely for the rest of her life, that is doubtful she will ever be able to repay in full, will be a constant reminder to her. My client is a good risk, who has been totally compliant with all conditions of her pretrial release since her release on bond on September 8, 2023, a period of almost 2 ½ years. Her role in this crime represents an aberration in conduct and I therefore ask the court to impose a well-below Guidelines range sentence, even if with a term of confinement, which would not preclude her ability to continue her education, provide service to her community and obtain employment to allow her to make restitution to the victims.

## CONCLUSION

      In sum, the defense requested well-below Guidelines range sentence to be followed by 3 years of Supervised Release, would demonstrate leniency, yet also fulfill the goals pursuant to 18 U.S.C. § 3553(a): (1) promotion of respect for the law by imposing a sentence sufficient to demonstrate condemnation of the defendant's actions; (2) provide adequate deterrence to the defendant and others from future similar conduct; (3) protection for the public and (4) afford the opportunity for reformation and rehabilitation. All of the goals of sentencing would be accomplished, sufficient but not greater than necessary.

      Very truly yours,

      Tanner & Ortega, L.L.P.

      Howard E. Tanner

cc:    AUSA Benjamin Levander (By ECF and Email/PDF)
       AUSA Margaret Vasu (By ECF and Email/PDF)